IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHARLOTTE GREEN,<br><br>               Plaintiff,<br><br>   vs.<br><br>EAGLE BANK; FANNIE MAE AS<br>TRUSTEE FOR SECURITIZED TRUST<br>FANNIE MAE GUARANTEED REMIC<br>PASS-THROUGH CERTIFICATES<br>FANNIE MAE REMIC TRUST 2010-3;<br>UNKNOWN SPONSOR; UNKNOWN<br>DEPOSITOR; SUNTRUST<br>MORTGAGE, INC; MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEM, aka "MERS"; and DOES 1<br>through 100,<br><br>               Defendants. | CV 13-159-M-DWM-JCL<br><br><br>ORDER, and FINDINGS<br>AND RECOMMENDATION |

Plaintiff Charlotte Green, appearing pro se, commenced this action alleging

the Defendants violated both federal and state law in relation to the execution of a

real estate loan and deed of trust pertaining to her residence at 402 3rd Ave. E.,

Polson, Montana ("the Residence"). She also challenges the Defendants' conduct

in proceeding with a foreclosure sale of the Residence that occurred in April 2013.

Green asserts Defendants had no enforceable interest in the Residence, and no

right or authority to foreclose on the Residence. She contends she is entitled to a

quiet title judgment granting her clear title to, and exclusive possession of, the

1

Residence.

This matter is before the Court on the following motions filed by the various Defendants: (1) Defendant Suntrust Mortgage Inc.'s ("Suntrust") Motion for Judicial Notice; (2) Suntrust's Fed. R. Civ. P. 12(b)(6) motion to dismiss; (3) Defendant Mortgage Electronic Registration Systems, Inc.'s ("MERS") renewed Fed. R. Civ. P. 12(b)(6) motion to dismiss; and (4) Defendant Fannie Mae as Trustee for Securitized Trust Fannie Mae Guaranteed REMIC Pass-through Certificates Fannie Mae REMIC Trust 2010-3's ("Fannie Mae") renewed Fed. R. Civ. P. 12(b)(6) motion to dismiss. For the reasons discussed, Suntrust's Motion for Judicial Notice is granted, and the Court recommends each of the motions to dismiss be granted.

## I.     Background

In December 2009, Green obtained a mortgage loan for $140,000.00 from a real estate lender, Defendant Eagle Bank, as evidenced by a promissory note ("Note") executed by Green. The loan was secured by a Deed of Trust to the Residence granted by Green in favor of Eagle Bank. (Doc. 14-1.) The Deed of Trust identifies Eagle Bank as the original lender, names Lake County Abstract and Title as the trustee, and states that MERS is a beneficiary under the Deed of Trust. But the Deed of Trust clarifies and provides that MERS "is acting solely as a nominee for the Lender, and Lender's successors and assigns." (Doc. 14-1 at 2.)

The Deed of Trust was executed under the Small Tract Financing Act of Montana, Mont. Code Ann. §§ 71-1-301 et seq.

In 2012, various interests under the Deed of Trust were transferred. On March 11, 2012, MERS executed a Corporate Assignment of Deed of Trust transferring the beneficial interest in the Deed of Trust to Suntrust. (Doc 14-2.) Then on July 27, 2012, Suntrust signed a Corporate Assignment of Deed of Trust transferring the beneficial interest to Federal National Mortgage Association. (Doc. 14-3.)

At some point, Green defaulted on the Note. Subsequently, the then successor trustee, First American Title Company of Montana, Inc., executed a Notice of Trustee's Sale. (Doc. 14-4.) The Residence was sold at the trustee's sale on April 26, 2013, and First American Title Company of Montana, Inc. executed a Trustee's Deed conveying the Residence to the Federal National Mortgage Association – the purchaser at the trustee's sale. (Doc. 14-5.)

Green believes Defendants did not have authority to foreclose on her Residence. She alleges that after she executed the original Note and the Deed of Trust her loan was improperly sold, "securitized", and placed in a Real Estate Mortgage Investment Conduit ("REMIC") Trust to be offered as a secured

investment.[1]  Specifically, she alleges her loan was transferred to Defendant

Fannie Mae as the Trustee for the REMIC identified in the caption of this case.

Green contends this "securitization" of the loan required separate assignments,

conveyances, and transfers of the Note and Deed of Trust to different entities,

thereby separating the ownership of the Note and the Deed of Trust, and severing

any connection the loan had to Green's Residence.  Green asserts that no single

entity owns both the Note and the Deed of Trust and, therefore, no entity had

either the authority or the right to foreclose on the Residence.  Green also contends

that no Defendant can establish a valid chain of title for all the various  transfers of

the Note and the Deed of Trust and, therefore, Defendants cannot establish that

any interests in the documents they may have had were legally and properly

acquired.  Finally, Green advances numerous allegations describing alleged

violations of the strict rules and procedures established for the process of

securitizing her loan transaction and selling it as an investment.

　　　Green also challenges the conduct of, and the procedures employed by,

Eagle Bank during the course of providing Green with an appropriate loan product

---

[1]Securitization generally describes the process of pooling loans and selling shares in the pools to investors on the open market.  *See Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011) (citation omitted); *see also* Christopher L. Peterson, *Predatory Structured Finance*, 28 Cardozo L. Rev. 2185, 2186 n.1 (2007).

or transaction for her Residence.  In general, Green contends Eagle Bank acted fraudulently and improperly in making her a loan on unfavorable terms with which Eagle Bank knew she would be unable to comply.        Green identifies and advances 10 separate legal causes of action against the Defendants under federal and state law:

1. <u>Lack of Standing/Wrongful Foreclosure, (Count I)</u>:  Green alleges that none of the Defendants had an enforceable right or interest in her Residence and, thus, they lacked standing to foreclose on the Residence.  Green also alleges MERS did not have authority to serve in any capacity relative to the subject Deed of Trust and foreclosure processes;

2. <u>Fraud in the Concealment, (Count II)</u>:  Green alleges Defendants fraudulently concealed the subsequent sale and securitization of her loan transaction;

3. <u>Fraud in the Inducement, (Count III)</u>:  Green alleges Defendants fraudulently represented to her that they were a "holder and owner" of the Note, and that they had authority to exercise the power of sale for the Residence granted in the Deed of Trust;

4. <u>Intentional Infliction of Emotional Distress, (Count IV)</u>:  Green alleges Defendants inflicted emotional distress upon her by wrongfully asserting a right to exercise the power of sale granted in the Deed of Trust;

5. <u>Slander of Title, (Count V)</u>:  Green alleges Defendants are liable for slander of title to her Residence;

6. <u>Quiet Title, (Count VI)</u>:  Green asserts she is entitled to a quiet title judgment granting her clear title to the Residence, and granting her the exclusive possession of, and quiet enjoyment of, the Residence on the ground that Defendants have no right or interest in her Residence;

7.    <u>Declaratory Relief, (Count VII)</u>:  Green requests a judicial determination of the rights and obligations of the respective parties relative to ownership rights and interests, or lack thereof, in the Residence.  She also requests a judicial determination as to the validity of the various documents involved in the loan transaction, her alleged default, and the foreclosure;

8.    <u>Violations of the Home Ownership Equity Preservation Act, 15 U.S.C. § 1639 ("HOEPA"), and the Truth In Lending Act, 15 U.S.C. § 1601 through § 1667f ("TILA"), (Count VIII)</u>:  Green contends Defendants failed to provide her with the various material disclosures required under the HOEPA and TILA relative to her loan transaction;

9.    <u>Violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), (Count IX)</u>:  Green alleges Defendants failed to disclose to her the nature of all the financial benefits and gains Defendants were to receive as a result of her loan transaction in violation of RESPA;

10.   <u>Rescission, (Count X)</u>:  Green requests rescission of the entire loan transaction relative to her Residence based on all of the violations and liabilities alleged in her Second Amended Complaint.

Green seeks to recover compensatory and punitive damage, as well as her costs and attorneys' fees.  Additionally, she seeks rescission of the loan transaction documents, and a judgment granting her clear title to the Residence.

Defendants Suntrust, MERS and Fannie Mae move to dismiss Green's Second Amended Complaint.  They argue that Green's claims should be dismissed because the allegations fail to set forth sufficient facts to state any legal claim on which relief could be granted.

## II.    <u>Applicable Law</u>

## A. **Fed. R. Civ. P. 12(b)(6) - Motion to Dismiss Standards**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to Green. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

## B. **Application of Montana Law**

In view of Green's claims under federal law, jurisdiction over her other claims advanced under Montana law is founded upon the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). "[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to

the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).

When an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted). The court should also rely on other persuasive authorities including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

## C.    Pro Se Pleadings

Because Green is proceeding pro se, the Court must construe her pleadings liberally, and her allegations, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). In general,

> a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. Discussion

### A. Suntrust's Motion for Judicial Notice

Suntrust moves the Court to take judicial notice of, and consider, various documents in its review of the pending motions to dismiss. The subject documents are identified in, and authenticated by, the affidavit testimony of Suntrust's counsel stating the documents are true and correct copies of the referenced documents filed in the public record. (Doc. 14.) All the documents are filed either in the official records of Lake County, Montana, or with the United States Bankruptcy Court for the Southern District of California in *In re Progressive Properties, Inc.*, Bankruptcy No. 12-13482-LA11.

In ruling on a Rule 12(b)(6) motion, a court may consider the complaint and only a very few other categories of materials. *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010). A court may consider evidence on which the complaint "'necessarily relies' if: (1) the complaint refers to the

document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The court may treat such document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id*. (citations omitted).

Green's pleading refers to, inter alia, the Deed of Trust which is central to Green's claims. Green does not object to the authenticity of the Deed of Trust submitted by Suntrust.

Additionally, in addressing a Rule 12(b)(6) motion the court may consider matters of which it may take judicial notice. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). The court "may take judicial notice of matters of public record[...], as long as the facts noticed are not subject to reasonable dispute." *Id*. (quotations and citations omitted). Specifically, under authority of Fed. R. Evid. 201, the court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted). And the courts may take judicial notice of "documents on file in federal or state courts." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citation omitted).

By Order entered August 13, 2013, the presiding District Judge, Donald W.

Molloy, ordered Green to file a brief in response to Suntrust's Motion for Judicial Notice no later than August 23, 2013. (Doc. 22 at 2.) Judge Molloy cautioned Green that her failure to file a response brief would be deemed an admission by her that Suntrust's motion is well-taken pursuant to L.R. 7.1(d)(1)(B).

Green did not file a response brief until September 12, 2013. (Doc. 39.) Therefore, her failure to timely file a response brief is deemed an admission by Green that Suntrust's motion should be granted.

Notwithstanding Green's untimely brief, the Court will at least note the arguments she presents in opposition to the Motion for Judicial Notice. Green asserts that despite the existence of the documents of public record referenced by Suntrust, she should still be entitled to conduct discovery to prove the merits of her claims. The Court agrees that, notwithstanding any judicially noticed documents, Green would still be permitted to conduct relevant discovery to support her claims if this case survives dismissal. Judicial notice of the subject documents would not prevent her from conducting discovery.

Green next argues that the Court is not permitted to adopt any factual matters asserted in the documents that are the subject of Suntrust's motion, but that the Court may only acknowledge the existence and contents of the documents filed of public record. The Court agrees that, as a general principal, if factual matters within the content of public records are subject to reasonable dispute, then

the Court is not permitted to take judicial notice of those factual matters. *See*

*Harris*, 682 F.3d at 1131. But the Court may still take judicial notice of the

existence of the particular documents in the public records even if those records

contain factual matters that are reasonably disputed. *United States v. Corinthian*

*Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Based on Suntrust's Motion for Judicial Notice and its supporting affidavit,

the Court will take judicial notice of all of the documents attached to the

Foundational Declaration of Jenny M. Jourdonnais. (Doc. 14.) All the documents

are filed either in the official public record of Lake County, or with the referenced

United States Bankruptcy Court in California. But to the extent Green identifies a

reasonable dispute, if any, as to any factual matters within those documents, the

Court will not take judicial notice of those matters.

## B.   <u>Suntrust, MERS, and Fannie Mae's Motions to Dismiss</u>

Defendants Suntrust, MERS, and Fannie Mae move to dismiss Green's

Second Amended Complaint on the ground that Green's allegations do not

sufficiently state any claim for relief under the 10 causes of action identified in her

pleading.

With regard to Suntrust's motion to dismiss, the Court first notes that

although Green filed a limited 3-page brief in response to the motion, the

arguments she presents do not respond to any of the specific legal arguments for

12

dismissal advanced by Suntrust under Fed. R. Civ. P. 12(b)(6).[2]  Green's failure to

respond to the specific grounds for dismissal is deemed an admission that

Suntrust's motion is well-taken.  L.R. 7.1(d)(1)(B).  The Court takes that

admission into account when considering Suntrust's motion.

Also, with respect to the motions to dismiss filed by MERS and Fannie

Mae, Green did not file any brief in response to those motions at all.  Accordingly,

the Court will similarly construe Green's lack of a response as an admission that

those motions are well-taken pursuant to L.R. 7.1(d)(1)(B).

### 1.    Green's Legal Claims Predicated Upon "Securitization"

Green places significant emphasis on her theories regarding the

securitization of her loan transaction.  She asserts that her loan secured by the

Deed of Trust was converted into a mortgage-backed security interest and sold to

other investors.  But she believes there is no properly recorded documentation of

the transfers of legal title as was necessary for the securitization process to be

valid.  Green believes this absence of a proper chain of title clouds title to the

---

[2]Green presents limited arguments in her brief which are not responsive to the legal grounds for dismissal asserted by Suntrust.  Green contends only that: (1) she expects to establish, through discovery, that the Defendants did not have authority or standing to foreclose on her Residence; (2) she intends to add a new legal claim under the Helping Families Save Their Homes Act of 2009, 15 U.S.C. § 1641(g); and (3) Defendants led her to believe she could negotiate a loan modification while, at the same time, Defendants pursued foreclosure.  These arguments do not respond to the legal merits of Suntrust's Rule 12(b)(6) motion.

Residence, thus preventing Defendants from possessing any legally enforceable interest with respect to the Residence. Ultimately, Green contends the securitization and the separation of the Note from the Deed of Trust has rendered those two documents unenforceable, and has divested Defendants of any interests they may have had in the Note, the Deed of Trust, and the right to foreclose on the Residence. Green's theories are lacking in merit.

Courts have consistently rejected mortgagors' theories asserting that the sale and securitization of a loan invalidates the power of sale authorized in a deed of trust. *Washburn v. Bank of America, N.A.*, 2011 WL 7053617, *5 (D. Idaho 2011) (citing cases). The theory that the securitization of a promissory note renders a deed of trust unenforceable "is frivolous, [and] has no support in the law[.]" *Marty v. Wells Fargo Bank*, 2011 WL 1103405, *7 (E.D. Cal. 2011) (citing cases). Furthermore, the Deed of Trust in this case permitted the Note to be sold. (Doc. 14-1 at 12.) Because the securitization of the Note did not affect the enforceability of the Deed of Trust or the power of foreclosure and sale authorized in the Deed of Trust, *see Heffner v. Bank of America*, 2012 WL 1636815, *3 (D. Mont. 2012), Suntrust, MERS, and Fannie Mae's motions should be granted in this respect.

## 2. <u>Lack of Standing/Wrongful Foreclosure - Count I</u>

In Count I Green alleges the Defendants did not have an enforceable right or interest in her Residence, and thus lacked standing to foreclose on the Residence.

14

### a.    Suntrust

Suntrust moves to dismiss Green's Count I because the facts alleged, and the public records of which the Court may take judicial notice, establish Suntrust had no involvement in the foreclosure and, therefore, bears no responsibility for that process.  The Court agrees.

The public records of Lake County reflect that on July 27, 2012, Suntrust signed a Corporate Assignment of Deed of Trust transferring the beneficial interest to Federal National Mortgage Association.  (Doc. 14-3.)  The subsequent Notice of Trustee's Sale issued by First American Title Company of Montana, Inc., acting as the successor trustee, occurred on September 12, 2012, and the trustee's foreclosure sale occurred on April 26, 2013.  (Docs. 14-4 and 14-5.)  Thus, the public record establishes that Suntrust transferred its interest in the Residence prior to the foreclosure proceedings, and that Suntrust was not involved in those proceedings.  Green's pleading does not specifically allege otherwise.  Finally, Green's failure to respond to Suntrust's motion is deemed an admission that Suntrust was not involved in any alleged wrongful foreclosure activity.  Suntrust's motion should be granted as to Count I.

### b.    MERS' Interest and Authority to Act with Respect to the Deed of Trust

MERS moves to dismiss Green's legal claims, including Count I, that are

15

predicated upon her contention that MERS had no authority, interest or right to take any action with respect to the Deed of Trust and the foreclosure of Green's Residence.[3] MERS is correct that, as a matter of law, it legitimately had authority to act on behalf of the beneficiary of the Deed of Trust. Accordingly, Green's claim in Count I asserting the MERS lacked standing and authority to foreclose should be dismissed.

For clarification, the Court first notes that MERS does not hold the beneficial interest in the Deed of Trust, and it is not the "beneficiary" within the contemplation of Montana's Small Tract Financing Act ("STFA"). *See Heffner*, 2012 WL 1636815 at *4 (citing *Joseph v. Bank of America Corp., et al.*, Cause Number CV 11-129-BLG-RFC-CSO (D. Mont. Findings and Recommendations dated April 23, 2012 at 26-28)).

Nonetheless, to the extent any of Green's allegations suggest MERS had no authority whatsoever with respect to the foreclosure proceedings against her Residence, she is incorrect. Montana law, as applied under the provisions of the

---

[3]MERS is an electronic database operated by MERSCORP, Inc. and created to track transfers of "beneficial interests" in home loans, and to track changes in loan servicers. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011). The MERS system was created to avoid the cumbersome process of recording multiple transfers of the deed of trust with the county by designating MERS as the nominal record holder of the deed of trust on behalf of the original lender and any subsequent lender, thereby requiring the deed of trust to only be recorded once. *Id*. at 1039.

STFA, permits principals – e.g. beneficiaries and trustees – to delegate tasks to agents. *See Heffner*, 2012 WL 1636815 at \*4-5 (citing *Diehl v. Northwest Trustee Services, Inc. et al.*, 2010 WL 2178513, \*1-2 (D. Mont. 2010), affirmed 2011 WL 834140, \*\*1 (9th Cir. 2011) and *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116, 120-121 (Mont. 2007)). Specifically, a lender is permitted to appoint MERS as its nominee in a STFA deed of trust, and to appoint MERS as its agent "cloaked with authority to act on the lender's behalf under the Deed of Trust." *Heffner*, 2012 WL 1636815 at \*4-5 (quoting *Joseph v. Bank of America Corp., et al.*, Cause Number CV 11-129-BLG-RFC-CSO (D. Mont. Findings and Recommendations dated April 23, 2012 at 33-34)).

In this case, the Deed of Trust identifies MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (Doc. 14-1 at 2.) The Deed of Trust then delegates authority to MERS as follows: "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this [Deed of Trust]." (Doc. 14-1 at 4.) Thus, MERS had authority under Montana law to foreclose on Green's Residence, and its motion directed at Count I of Green's Second Amended Complaint should be granted.

### c.    **Fannie Mae**

The Court concludes Green's allegations against Fannie Mae in Count I fail to state any claim upon which relief could be granted. Rule 8(a) of the Fed. R. Civ. P. requires that a plaintiff's allegations must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Green's allegations simply assert that Defendants had no standing or authority to conduct the foreclosure process. But those allegations, in and of themselves, do not affirmatively "show" that the lack of standing or authority subjects Defendants to liability that would entitle Green to seek some form of legal relief. Allegations that merely assert that a defendant lacks authority to act do not implicate any legal cause of action that would subject a defendant to liability. A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). As a matter of law, Green's allegations in Count I do not invoke a cognizable legal theory. Consequently, to the extent Count I is advanced against Fannie Mae, it should be dismissed.

### 3.    **Fraud - Counts II and III**

Suntrust, Fannie Mae, and MERS each move to dismiss Green's claims of fraud on the basis that her allegations fail to set forth the necessary detail as

required under Fed. R. Civ. P. 9(b).  The Court agrees.

In Count II of her Second Amended Complaint, Green alleges that at the time she entered the loan transaction Defendants fraudulently concealed from her the reality that her loan would undergo the securitization process and be sold to other investors.  She alleges Defendants are liable for that alleged "fraud in the concealment."  (Doc. 17 at 20-21.)

In Count III, Green alleges Defendants fraudulently misrepresented to her that they owned the debt obligation she owed, and that they had the authority to foreclose and sell the Residence pursuant to the Deed of Trust.  Green's allegations, however, do not expressly implicate, with sufficient detail, any conduct committed by either Suntrust, Fannie Mae, or MERS.

With respect to Green's claims in Counts II and III against Suntrust, her allegations and the public records establish that Suntrust had no involvement with the fraud alleged in those Counts.  Suntrust first received an interest in the Residence on March 11, 2012, long after Green entered the subject loan transaction which occurred in December 2009.  (Docs. 14-1 and 14-2.)  And Suntrust conveyed its beneficial interest in the Deed of Trust to another party on July 27, 2012, long before any foreclosure proceedings began.  Green's allegations do not allege that Suntrust participated in either the asserted fraudulent concealment during the loan transaction, or the alleged misrepresentations as to

the Defendants' authority to foreclose. And Green's failure to respond to Suntrust's motion constitutes and admission that Suntrust was not involved in any of the alleged fraudulent activity.

More importantly, with respect to Suntrust, Fannie Mae and MERS, Green's allegations are insufficient to support any claim of fraud in either Count II or III. Federal Rule of Civil Procedure 9(b) requires that claims of fraud "must state with particularity the circumstances constituting fraud[.]" *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Salameh*, 726 F.3d at 1133 (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Any claim that "sound[s] in fraud" must also comply with the particularity requirements of Rule 9(b). *Goldberg v. BAC Home Loans Servicing, LP*, 2013 WL 4501014, *4 (S.D. Cal. 2013) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). To satisfy the particularity standard a pleading must "'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh*, 726 F.3d at 1133 (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

Green's claims of fraud asserted in Counts II and III of the Second Amended Complaint do not include the necessary detailed factual allegations of

20

the specific fraudulent or misleading conduct allegedly committed by any

Defendant, including Suntrust, Fannie Mae, and MERS, which could give rise to

liability.  Furthermore, since Green did not respond to this aspect of the pending

motions to dismiss, she has not defended and explained her allegations of fraud

and she is deemed to have admitted that the motions are well-taken with respect to

the issues of fraud.  Consequently, the Court concludes Green's claims fail to

satisfy Rule 9(b)'s particularity requirement, and Counts II and III should be

dismissed as to Suntrust, Fannie Mae, and MERS.

**4.      Intentional Infliction of Emotional Distress - Count IV**

Green alleges Defendants are liable for intentionally inflicting emotional

distress upon her by threatening her with a foreclosure on her residence when they

had no legal right to do so.

Montana law recognizes independent causes of action for negligent or

intentional infliction of emotional distress.  The claims "will arise under

circumstances where serious or severe emotional distress to the plaintiff was the

reasonably foreseeable consequence of the defendant's negligent or intentional act

or omission." *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411, 429

(Mont. 1995).

Defendants Suntrust, Fannie Mae, and MERS argue that Green's allegations

do not sufficiently state a cognizable claim for the infliction of emotional distress.

For the reasons discussed, the Court agrees.

### a.    Suntrust

As discussed, Suntrust's role in Green's loan transaction was limited.  The public records reflect that Suntrust was involved only as the entity which held the beneficial interest in the Deed of Trust for a short period of time from March 11, 2012, through July 27, 2012.  Green's allegations do not expressly allege that Suntrust itself engaged in the wrongful foreclosure conduct alleged in Count IV, and the public records reflect that Suntrust had no legal interest in the Residence during the time of the foreclosure proceedings, and it played no role in the foreclosure conduct which allegedly inflicted emotional distress upon Green. Since Suntrust no longer held an interest in the Residence during the foreclosure process in late 2012 and in 2013, Green's allegations do not plausibly suggest that her alleged emotional distress caused by the foreclosure process was the reasonably foreseeable consequences of Suntrust's possession of the beneficial interest from March through July 2012.  Green's allegations do not plausibly indicate that Suntrust is liable for the infliction of emotional distress that allegedly occurred after it disposed of its beneficial interest in the Deed of Trust, and Green's failure to respond to this aspect of Suntrust's motion is an admission that the claim is subject to dismissal.

### b.    Fannie Mae and MERS

As noted, a cause of action for the infliction of emotional distress may exist "where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission." *Sacco*, 896 P.2d at 429. A plaintiff must ultimately establish that the emotional distress was "so severe that no reasonable person could be expected to endure it." *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 222 (Mont. 2008) (quoting *Sacco*, 896 P.2d at 425-426, 428-29). *See also Renville v. Fredrickson*, 101 P.3d 773, 775-76 (Mont. 2004) (discussing standard for severity and seriousness).

Fannie Mae and MERS move to dismiss Green's claim for the intentional infliction of emotional distress on the ground that Green's allegations fail to identify sufficient factual information that reach the requisite level of plausibility. The Court agrees.

To survive a Rule 12(b)(6) motion to dismiss, allegations in a pleading must contain sufficient facts beyond mere conclusory statements. The standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations", a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Id*. (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For purposes of Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The factual allegations must "show[] that the pleader is entitled to relief[.]" *Id*., 556 U.S. at 679 (quoting Rule 8(a)(2)).

Fannie Mae and MERS argue that Green's allegations are not pled with sufficient facts to support the inference that it is plausible that their conduct could have inflicted severe emotional distress upon Green. At most, Green's allegations describe Defendants as having engaged in conduct consistent with the rights and interests they had under the Deed of Trust and the Note signed by Green. Green simply does not agree that Defendants had any rights under the referenced documents. Therefore, Green's conclusory allegations do not sufficiently describe facts which make it plausible to believe that any emotional distress she may have experienced would have been the reasonably foreseeable consequence of Fannie Mae and MERS's conduct in exercising rights they may have had under the Deed of Trust, the Note, or Montana law. Green's allegations do not plausibly suggest Fannie Mae or MERS engaged in any intentional wrongful conduct that reasonably would have inflicted emotional distress upon her.

24

Again, Green did not respond to Fannie Mae and MERS's motion to dismiss. Therefore, her failure to respond constitutes an admission that her claim against Fannie Mae and MERS for the infliction of emotional distress is implausible. Their motions to dismiss should, therefore, be granted.

### 5. Slander of Title - Count V

Green alleges Defendants are liable for slander of her title to her Residence through their conduct in publishing and filing documents relative to her default on the Note, and the trustee's foreclosure sale. Green refers to an unidentified notice of default document, the Notice of Trustee's Sale, the Trustee's Deed, and other foreclosure documents, all of which allegedly slandered her title. Green contends Defendants did not have any right or interest that they could enforce through the foreclosure process and, therefore, the referenced documents can be interpreted as "denying, disparaging, and casting doubt" upon Green's title to the Residence. (Doc. 17 at 26.)

Under Montana law, an action for slander of title arises "where one 'maliciously publishes false matter which brings in question or disparages the title to property, thereby causing special damage to the owner.'" *Pryor v. Babcock Building Corp.*, 45 P.3d 35, 37 (Mont. 2002) (citations omitted).

### a. Suntrust

Suntrust moves to dismiss Green's slander of title claim on the ground that

Suntrust is not alleged to have published or recorded any of the documents which allegedly slandered her title. Green does not expressly allege Suntrust published any notice of default, and the public records establish that both the Notice of Trustee's Sale and the Trustee's Deed were executed and recorded by First American Title Company of Montana, Inc., not by Suntrust. (Docs. 14-4 and 14-5.) Thus, Green's factual allegations asserting a claim for slander of title do not plausibly suggest Suntrust itself engaged in the slanderous conduct alleged, and the documents of public record establish it was not involved in the specific alleged slanderous conduct. Further, Green's failure to respond to Suntrust's motion on this point is an admission of the merits of Suntrust's motion.

### b. **Fannie Mae and MERS**

Green's allegations in her cause of action against Fannie Mae and MERS for slander of title are insufficient under the Rule 12(b)(6) standards. First, as noted, First American Title Company of Montana, Inc., and not Fannie Mae or MERS, published, recorded, or filed the documents alleged to have slandered Green's title. Green's allegations do not suggest Fannie Mae or MERS were involved in the publication of the alleged offending documents.

Second, to the extent Fannie Mae and MERS had rights and interests under the Deed of Trust, Green's allegations still fail to state a viable claim. Her allegations do not support a reasonable inference that it is plausible that Fannie

Mae or MERS acted maliciously with respect to the referenced transaction documents filed and recorded with respect to Green's Residence, or that any specific matter in those transaction documents is actually false. Absent this requisite factual specificity in the allegations, Green's claim for slander of title is nothing more than "a formulaic recitation of the elements of a cause of action" for slander of title, and is not sufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Green's failure to file a brief in response to Fannie Mae and MERS's motions is an admission that their motions to dismiss the slander of title claim are well-taken. Fannie Mae and MERS's motions should be granted as to Green's slander of title claim in Count V.

### 6. Quiet Title - Count VI

Green assert a legal claim to obtain a quiet title judgment granting her clear legal title to, and quiet enjoyment of, her Residence. Suntrust, Fannie Mae, and MERS move to dismiss this claim on the basis that her allegations do not satisfy the required elements of a quiet title action. The Court agrees.

Under Montana law, a quiet title action is authorized for the purpose of determining a person's rights in claiming title to real property as against others' claims to that property. *See* Mont. Code Ann. § 70-28-101. To obtain a decree to quiet title to property involving a mortgage interest, a mortgagor must establish: (1) that the debt has been satisfied, (2) that she has offered to pay the debt; or (3)

the debt is unenforceable as a matter of law.  *See Montana Valley Land Co. v. Bestul*, 253 P.2d 325, 328 (Mont. 1953).

Green does not plead sufficient factual allegations to state a viable quiet title claim.  She does not contend her debt has been satisfied, or that she has offered to pay the debt.  Further, for the reasons discussed in this recommendation, the various legal theories on which she relies in her Second Amended Complaint to suggest that her debt obligation in the Note is unenforceable lack legal merit. Thus, she does not present a viable quiet title claim, and the claim should be dismissed.

### 7.    Declaratory Relief - Count VII

Green requests declaratory relief establishing Defendants did not have authority to foreclose on her Residence.  Specifically, she requests a legal determination as to the validity of the Deed of Trust and an unidentified notice of default.  Also, she asserts she is entitled to a declaration establishing Defendants have no right, title or interest in the Residence, and that she is entitled to the exclusive possession of the Residence, clear title to the Residence, and the quiet enjoyment of the property.

#### a.    Suntrust

Suntrust moves to dismiss Green's claim for declaratory relief asserted against it on the ground that there is no present or existing actual controversy

between it and Green. The Court agrees.

Declaratory relief is available for "parties between whom an actual controversy exists" to obtain a ruling as to respective rights and interests. *Donaldson v. State*, 292 P.3d 364, 385 (Mont. 2012) (citation and quotation omitted).

Suntrust asserts, and the public record establishes, that Suntrust no longer has any interest in the Residence. Since Suntrust conveyed its beneficial interest to Federal National Mortgage Association on July 27, 2012, there exists no actual controversy between Suntrust and Green. Green's pleading does not allege otherwise. Therefore, Green's claim for declaratory relief against Suntrust should be dismissed.

### b.      **Fannie Mae and MERS**

Fannie Mae and MERS similarly move to dismiss Green's claim for declaratory relief seeking to establish the respective rights and interests relative to the subject Residence on the grounds that Green no longer has any interest in the Residence. The Court agrees.

The public records establish that on April 26, 2013, the Residence was sold at the trustee's sale, and that First American Title Company of Montana, Inc. executed a Trustee's Deed conveying the Residence to Federal National Mortgage Association – the purchaser at the trustee's sale. (Doc. 14-5.) The public record,

of which the Court may take judicial notice, establishes Green no longer has any right, title or interest in the Residence. Consequently, there exists no actual controversy between Fannie Mae, MERS, and Green with regard to respective rights and interests in the Residence, and Green's pleading does not allege otherwise. Green's failure to file a responsive brief concedes this point. Therefore, Green's claims for declaratory relief against Fannie Mae and MERS should be dismissed.

### 8. Truth In Lending Act and Home Ownership Equity Preservation Act - Count VIII

Green alleges Defendants failed to provide accurate material disclosures to properly inform her relative to the loan transaction she entered in 2009 with respect to the Residence. She alleges Defendants are liable under the Truth In Lending Act, 15 U.S.C. § 1601 through § 1667f ("TILA"), and the Home Ownership Equity Preservation Act, 15 U.S.C. § 1639 ("HOEPA") within TILA. Green alleges Defendants' conduct caused damages to her, and that she is entitled to rescind the loan transaction.

Suntrust, Fannie Mae, and MERS moves to dismiss Green's TILA and HOEPA claims on multiple grounds, including their assertions that the claims are time-barred due to the applicable statutes of limitations. Defendants are correct.

TILA provides consumers with a right to rescind a residential secured loan

transaction if a lender fails to comply with disclosure requirements under TILA and its regulations. 15 U.S.C. § 1635(a); *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325, 1327 (9th Cir. 2012). TILA, however, requires that a right of action be commenced within three years of "the date of consummation of the transaction[.]" 15 U.S.C. § 1635(f); *McOmie-Gray*, 667 F.3d at 1328, 1329 (concluding the right of rescission extinguishes three years after the date of the original loan transaction). *See also Beach v. Ocwen Federal Bank*, 523 U.S. 410, 419 (1998) (recognizing that no right to rescind is permitted after the 3-year period set forth in section 1635(f)).

Additionally, TILA at 15 U.S.C. § 1640 provides a consumer with a cause of action for damages caused by a lender's violation of TILA and the HOEPA. *McOmie-Gray*, 667 F.3d at 1328. The action, however, must be commenced "within one year from the date of the occurrence of the violation[.]" 15 U.S.C. § 1640(e). *See King v. State of California*, 784 F.2d 910, 913 (9th Cir. 1986).

Green's claims under TILA and HOEPA arise from disclosures that Defendants allegedly failed to provide to Green prior to her loan transaction which occurred in December 2009. Furthermore, the consummation of the original loan transaction occurred in December 2009. Green commenced this action on June 7, 2013. (Doc. 16.) Thus, Green's TILA and HOEPA claims are clearly barred by the one-year and the three-year periods of limitations in sections 1635(f) and

1640(e), respectively.  Green's failure to file a brief in response to these motions to dismiss constitutes her concession that the statutes of limitations bar her claims. Consequently, Green's claims in Count VIII should be dismissed.

### 9.    Real Estate Settlement Procedures Act - Count IX

Green's Second Amended Complaint includes a claim under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA").  She alleges Defendants have received a disproportionate amount of income and interests derived from her loan transaction in violation of RESPA.

Suntrust, Fannie Mae, and MERS move to dismiss Green's RESPA claims on various grounds, including their contention that the claims are barred by the applicable statute of limitations.  Defendants' motions have merit.

RESPA permits a cause of action in limited situations as follows:

> RESPA creates a private right of action for only three types of wrongful acts:  (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f).

*Das v. WMC Mortgage Corp*, 2012 WL 1657111, *7 (N.D. Cal. 2012) (citing

*Patague v. Wells Fargo Bank, N.A.*, 2010 WL 4695480, *3 (N.D. Cal. 2010)).

Although Green does not identify the specific statutory basis for her RESPA claims, her allegations asserting that Defendants obtained an improper "windfall"

suggest that her claims fall under 12 U.S.C. § 2607 for alleged unlawful kickbacks or receipt of split charges. 12 U.S.C. § 2607(a) and (b). But an action for a violation of section 2607 must be commenced "within [...]1 year [...] from the date of the occurrence of the violation[.]" 12 U.S.C. § 2614.

Green's allegations assert Defendants are liable for failing to disclose to her the windfall income and interests they stood to receive at the time she entered her loan transaction in December of 2009. But Green did not commence this action until June of 2013. Therefore, her RESPA claims under section 2607 should be dismissed, and Green has not opposed this conclusion.

### 10.   Rescission - Count X

Green alleges she is entitled the rescission of her loan transaction as a remedy that is available to her based on the merits of all of her legal claims for relief advanced in her Second Amended Complaint. But for the reasons discussed herein, all of Green's legal claims are subject to dismissal. Therefore, her claim for the remedy of rescission predicated on what the Court has found are legally deficient claims for relief should also be dismissed.

## IV.   Conclusion

For the reasons discussed above, Green's allegations against Suntrust, Fanni Mae, and MERS fail to state a viable claim for relief under any of the legal theories advanced in her Second Amended Complaint. Therefore, IT IS

RECOMMENDED that Defendants' motions to dismiss be GRANTED, and

Green's claims against Suntrust, Fannie Mae, and MERS be DISMISSED.

DATED this 7th day of November, 2013.

Jeremiah C. Lynch
United States Magistrate Judge